IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES** | * |
| v. | * Crim. Case No.: SAG-96-086 |
| **DEMETRIUS SMITH,** | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM OPINION

In 1996, Demetrius Smith pled guilty to murder in aid of racketeering and received a sentence of 500 months in prison. ECF 50-1 at 1-2. Although a prior motion for sentence reduction under 18 U.S.C. § 3582(c)(1)(A) (hereinafter "Motion for Compassionate Release") was denied, ECF 77, Smith filed a second Motion for Compassionate Release on May 11, 2022. ECF 81, 84. Full briefing ensued, ECF 88, 90, 91, and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons that follow, Smith's Motion will be denied without prejudice.

I.  **LEGAL STANDARDS**

As part of the First Step Act, enacted in December, 2018, Congress expanded 18 U.S.C. § 3582(c), which permits courts to reduce an existing term of imprisonment where "extraordinary and compelling reasons warrant such a reduction." *See* 18 U.S.C. § 3582(c)(1)(A)(i) (2018); Pub. L. No. 115-391, tit. VI, § 603(b), 132 Stat. 5194, 5239-41 (2018). Whereas previously, any motion for compassionate release had to be initiated by the Bureau of Prisons ("BOP"), the First Step Act authorized defendants to move the Court on their own behalf for a reduction in their sentence for "extraordinary and compelling reasons." § 603(b)(1). Before a defendant's motion can be filed with the Court, one of two conditions must be satisfied: (1) the defendant must have exhausted all administrative remedies to appeal the BOP's failure to bring a motion on his behalf, or (2) thirty

days must have lapsed "from the receipt of such a request by the warden of the defendant's facility," whichever is earlier. *Id.* Once a motion for compassionate release is properly filed, the Court follows a three-step inquiry: (1) determining whether "extraordinary and compelling reasons" render the inmate eligible for compassionate release; (2) considering whether the factors set forth in 18 U.S.C. § 3553(a) weigh in favor of a sentence reduction; and (3) ensuring that the reduction is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).

**II.   ANALYSIS**

The Government concedes that Smith adequately exhausted his administrative remedies. *See* ECF 88 at 3. Thus, this Court turns to the three-step inquiry enumerated under § 3582(c)(1)(A), beginning with whether Smith has established any "extraordinary and compelling reason[]" warranting further consideration of compassionate release.

Congress has charged the United States Sentencing Commission ("Sentencing Commission") to "describe what should be considered extraordinary and compelling reasons for sentence reduction" under § 3582(c)(1)(A). 28 U.S.C. § 994(t) (2018). In response, the Sentencing Commission defined "extraordinary and compelling reasons" to exist where (A) the defendant is suffering from a terminal or serious medical condition; (B) the defendant is at least 65 years old, has failing health, and has served at least ten years or 75 percent of his sentence, whichever is less; (C) the caregiver of the defendant's minor child dies or becomes incapacitated, or the defendant's spouse or partner becomes incapacitated and the defendant is the only available caregiver; or (D) "other reasons" as determined by the BOP. *See* U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 cmt. n.1(A)–(D) (U.S. SENTENCING COMM'N 2018) (hereinafter "U.S.S.G."). This Court has authority to consider any "extraordinary and compelling reason" a defendant might

raise, regardless of the BOP's determinations. *See United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020).

Relevant to this case, the COVID-19 pandemic can, in certain circumstances, give rise to an "extraordinary and compelling reason[]" for an inmate's release under the First Step Act. *See, e.g.*, *Wise v. United States*, Crim. No. ELH-18-72, 2020 WL 2614816, at *6-8 (D. Md. May 22, 2020); *United States v. Gutman*, Crim, No. RDB-19-0069, 2020 WL 2467435, at *2 (D. Md. May 13, 2020). In this Court's view, the case law demonstrates that continued exposure to COVID-19 in an incarcerative setting might convert an otherwise manageable medical condition into a "serious medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *See* U.S.S.G. § 1B1.13 cmt. n. 1(A)(ii)(I).

However, the fact that COVID-19 is present in a correctional facility is not alone sufficient to qualify an inmate for compassionate release under the First Step Act. *See United States v. Williams*, Crim. No. PWG-13-544, 2020 WL 1434130, at *3 (D. Md. Mar. 24, 2020) (Day, M.J.) ("The existence of the present pandemic, without more, is not tantamount to a 'get out of jail free' card."). Instead, relevant case law instructs that to qualify for compassionate release, an inmate must demonstrate that he: (1) has a condition that compellingly elevates his risk of becoming seriously ill, or dying, from COVID-19, and (2) is more likely to contract COVID-19 in his particular institution than if released. *Compare Wise*, 2020 WL 2614816, at *6-7 (discussing the danger that COVID-19 poses, and collecting cases finding that "serious chronic medical conditions and old age qualify" as compelling reasons for compassionate release), *and United States v. Harper*, Crim. No. 7:18-00025, 2020 WL 2046381, at *3, *3 n.3 (W.D. Va. Apr. 28, 2020) (release justified by the defendant's age, heart condition, COPD, emphysema, and asthma, coupled with

3

the fact that the prison he was housed at had "the fourth largest number of infections among federal prisons in the country"), *and United States v. Mel*, Crim. No. TDC-18-0571, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020) (release warranted where defendant was housed at one of the "federal prisons most profoundly impacted by COVID-19," and had a serious medical condition for which she had been prevented from receiving treatment), *with United States v. Austin*, Case No. 15-20609, 2020 WL 2507622, at *4-5 (E.D. Mich. May 15, 2020) (finding that even if the defendant's petition was timely, release would be improper, even though he both was immunocompromised and had heart disease, because there were no COVID-19 cases at his prison), *appeal filed*, No. 20-1523 (6th Cir. June 8, 2020); *and United States v. Shah*, Case No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. Apr. 22, 2020) (denying release, in part, because there were no COVID-19 cases at the inmate's facility, and the prison was making efforts to protect inmates).

Smith's medical records demonstrate that he has certain medical conditions widely recognized, several years into the pandemic, to increase a person's risk of COVID-19 complications. On the other hand, this Court notes the availability of highly effective vaccines approved by the Food and Drug Administration. As best we know today, although the vaccines may only modestly reduce the likelihood of a recipient's infection, they dramatically reduce most recipients' risk of severe complications or death from COVID-19. Smith, however, has opted not to be vaccinated, citing his religious beliefs as a Jehovah's Witness. As his counsel concedes, though, that religion has officially declared vaccination to be "a personal decision." ECF 91 at 8 n.8. Smith is well within his rights to exercise his religion as he chooses, but this Court will not find COVID-19 risk to pose an "extraordinary and compelling circumstance" where an individual makes a personal decision to expose himself to greater risk by declining vaccination. Such a

4

decision would undermine the valiant effort of the BOP to best protect its incarcerated population by maximizing overall vaccination rates within its facilities.

The remaining question for the Court, then, is whether absent the COVID-19 justification, Smith's arguments regarding the disproportionate length of his sentence and his rehabilitation amount to an "extraordinary and compelling reason" justifying further consideration of his release. Recently, in *McCoy*, 981 F.3d at 271, the Fourth Circuit addressed a somewhat similar issue, considering consolidated appeals in cases in which courts had considered as "extraordinary and compelling reasons" the length of the defendants' "stacked" sentences under 18 U.S.C. § 924(c). Specifically, those courts weighed the disparity between those sentences and those that would be imposed after Congress enacted the First Step Act, which ended the practice of § 924(c) "stacking." The district courts granted the defendants' motions and reduced their sentences, reasoning that the reductions were not inconsistent with any applicable policy statement by the Sentencing Commission because the Sentencing Commission has not issued any policy statements since the First Step Act was enacted on December 21, 2018. *Id.* Because Congress ended the practice of § 924(c) stacking, there is no question that the defendants discussed in *McCoy* would have received dramatically lower sentences if sentenced today – by a full 30 years. The district courts considered that fact, in addition to the individualized circumstances presented by each defendant, including their "exemplary prison records and other evidence of rehabilitation," and concluded that their sentences should be reduced to time served. *Id.* at 279. The Fourth Circuit upheld those rulings. *Id.*

In contrast to the defendants in *McCoy*, there has been no intervening act of Congress analogous to the elimination of § 924(c) stacking that could directly reduce Smith's existing sentence. To the contrary, Congress has increased the statutory minimum for murder in aid of

racketeering over the years, such that the available sentences are now limited to life in prison or the death penalty. Nonetheless, Smith argues that prosecutors today would not charge him with murder in aid of racketeering, because that charge is typically reserved for the leaders of violent organizations and not defendants, like Smith, who participated in a single violent incident. In support of his position, Smith cites several examples of recent cases in which defendants of similar ages and backgrounds were charged with lesser offenses and received significantly lower terms of imprisonment, sometimes for more violent conduct. ECF 81 at 11-12.

Each case is different, however, and it is difficult to predict how a prosecutor would evaluate Smith's particular case in determining what offense to charge and what plea offer to make. This Court further notes that the sentencing judge imposed a sentence *higher* than that recommended by Government counsel, suggesting that he found Smith's case to warrant more significant punishment.

Smith asks the Court to focus on the second factor, his history and characteristics such as his immature age at the time of the offense, his current age, and especially his behavior throughout his incarceration. He has participated in many rehabilitative programs, discovered his faith, and worked to rehabilitate younger inmates through his participation as an instructor in, "Reach One Before It's Too Late." ECF 81 at 33. This Court recognizes Smith's meaningful accomplishments during his term of imprisonment, and the support from his family and friends expressed in their letters attached to his motion. ECF 81-5–ECF 81-16. However, this Court also acknowledges that Smith's disciplinary record while incarcerated has been less than stellar at times. He has a very recent infraction for use of drugs or alcohol. ECF 88-3 at 1. Before that, though, his most recent infraction was in 2009, representing one of his several early infractions for possession of intoxicants in the prison facility. *Id.* While far from the worst record, then, this Court cannot

categorize Smith's prison record as "exemplary," like those defendants who received compassionate release in *McCoy*.

In the end, while this Court believes it would have the authority to find a combination of the length of Smith's sentence and his prison record/rehabilitation to constitute an extraordinary and compelling reason justifying further consideration of compassionate release, it does not make that finding on the current record. The Court does not foreclose, however, the possibility that further demonstration of truly rehabilitated conduct could alter its view of the totality of the circumstances. If this Court were to find that Smith eventually satisfies the extraordinary and compelling standard, it will consider modifying his sentence to a total term of 360 months. Accordingly, Smith will be permitted to refile his motion two years from the date of this order if he has maintained an infraction-free disciplinary record to present, with any other relevant evidence including his continued participation in positive rehabilitative activities, for this Court's consideration.

Smith's Motion, ECF 81, will be denied by separate order, with leave to refile the motion if the conditions discussed herein are met.

　　　　　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　　　　Stephanie A. Gallagher
　　　　　　　　　　　　　　　　　　　　　United States District Judge